UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE UNITED STATES OF AMERICA,
     *ex. rel.*
     Robert Steinman
     1944 Classic Drive
     Coral Springs, FL  33071

          Plaintiff,

v.

OFFICE PRO, INC.
     Registered Agent:
     Hollis R. Casey
     620 Oliver Road
     Montgomery, AL  36117

HASKELL NEW YORK INC.
     9 Desbrosses Street
     New York, NY  10013

     Serve: New York Secretary of State
     New York Department of State
     One Commerce Plaza
     99 Washington Avenue
     Albany, NY  12231

AVDEALS AMERICA, INC.
     Registered Agent:
     Wilmington Trust SP Services, Inc.
     1105 N. Market Street, Suite 1300
     Wilmington, DE  19801

ABC LASERJET INC.
     Registered Agent:
     Mita Parikh
     4522 Treadstone Ct.
     Suwanee, GA  30024

WTD SUPPLY INC.
     16 Rewe Street
     Brooklyn, NY  11211

     Serve: New York Secretary of State

CIVIL ACTION NO.


COMPLAINT FOR VIOLATIONS
OF FEDERAL FALSE CLAIMS ACT
(31 U.S.C. §§3729 - 3733)

1

**New York Department of State**
**One Commerce Plaza**
**99 Washington Avenue**
**Albany, NY  12231**

**Defendants.**

## COMPLAINT

1.      This is an action to recover damages and civil penalties on behalf of the United States of America arising from the false claims and statements made by Office Pro, Inc., Haskell New York Inc., AVDEALS America, Inc., ABC Laserjet Inc., and WTD Supply Inc., (hereinafter Defendants), in violation of the Federal False Claims Act, 31 U.S.C. §3729 *et. seq.*

2.      The False Claims Act (hereinafter the Act), originally enacted in 1863 during the Civil War, was substantially amended by the False Claims Amendments Act of 1986, signed into law on October 17, 1986; and by the Fraud Enforcement and Recovery Act of 2009, signed into law on May 20, 2009.  Congress' intent was to enhance the Government's ability to recover losses sustained as a result of fraud against the United States and to provide a private cause of action for the protection of employees and other who act in furtherance of the purposes of the Act.  Congress acted after finding that fraud in federal programs and procurement is pervasive and that the Act, which Congress characterized as the primary tool for combating fraud in government contracting, was in need of modernization.

3.      The Act provides that any person who knowingly submits a false or fraudulent claim to the Government for payment or approval is liable for a civil penalty of up to $10,000 for each such claim, plus three times the amount of the damages sustained by the Government,

2

including attorneys' fees, expenses and costs. The Act allows any person having information regarding a false or fraudulent claim against the Government to bring a private cause of action for himself and on behalf of the Government and to share in any recovery. The complaint is to be filed under seal for sixty days (without service on the Defendants during such sixty-day period) to enable the Government (a) to conduct its own investigation without the Defendants' knowledge and (b) to determine whether to join the action.

4.      Based on these provisions, Plaintiff/Relator, Robert Steinman, seeks to recover damages and civil penalties arising from Defendants' presentation of false claims to the United States Government in connection with the selling of non-compliant products to the United States Government.

5.      Defendants Office Pro, Inc., Haskell New York Inc., AVDEALS America, Inc., ABC Laserjet Inc., and WTD Supply Inc. knowingly certified, and the government paid a claim, for the sale of a product that was based on a false certification as to the country of origin.

6.      Plaintiff Steinman has direct knowledge that Defendants have violated the False Claims Act because they have sold products to the United States Government that did not originate in designated countries under the Trade Agreements Act, and therefore are presenting false claims to the United States Government for payment, and/or because they are not correctly identifying the country of origin of products offered for sale to the United States Government.

7.      The Buy American Act was enacted during the Great Depression and is designed to promote American industry and jobs by requiring that certain public projects use only domestically produced materials. 41 U.S.C. §§ 8301-05.

8.      The Trade Agreements Act, in relevant part, waives the requirements of the BAA for supply contracts above a specified threshold amount, which is currently set at $203,000.[1] *See* 19 U.S.C §2511(a); 48 C.F.R. §25.402.  "Since the estimated dollar value of each Schedule exceeds the established Trade Agreements Act (TAA) threshold, the TAA is applicable to all Schedules.  In accordance with the TAA, only U.S.-made or designated country end products shall    be    offered    and    sold    under    Schedule    contracts."    *See* http://www.gsa.gov/portal/content/200369#taa.

9.      The American Reinvestment and Recovery Act applies to Government purchases using funds that have been allocated under the statute.

## PARTIES

10.     Plaintiff Robert Steinman is a resident of Coral Springs, Florida.  For almost 30 years, Mr. Steinman has been a government vendor, supplying products to the Government under Trade Agreements Act contracts.  Mr. Steinman has supplied the Government with office products, electronics, tools and hardware, appliances, furniture, auto parts and other items.  In this capacity, Robert Steinman gained direct knowledge of the allegations contained in this Complaint.

11.     Defendant Office Pro, Inc., is a corporation with its principal office in Montgomery, Alabama that sells products to government and non-government customers.  At all times relevant herein, Defendant sold products to the United States Government and its agencies under a General Services Administration (GSA) Multiple Awards Schedule and listed products for sale on the GSA Advantage Website and, as such, has agreed to comply with the Trade Agreements Act, the Buy American Act and the American Recovery and Reinvestment Act, that

---

[1] *See* http://www.gsa.gov/MASDESKTOP/section3_10.html ("The current threshold for the applicability of the Trade Agreements Act (for a supply or service contract) is $203,000.").

prohibit the sale of goods to the United States that originate in non-designated countries, and/or the Defendant has agreed to specifically and correctly identify the country of origin of all products offered for sale to the United States Government. From 2010 to 2012, Defendant Office Pro, Inc. maintained GSA Contracts selling goods and services to the United States Government under Schedule 75. Under these contracts, Office Pro, Inc., earned $214,192 in Fiscal Year 2010; $137,951 in Fiscal Year 2011; and $271,659 in Fiscal Year 2012.

12.    Defendant Haskell New York Inc., is a corporation with its principal office in New York, New York that sells products to government and non-government customers. At all times relevant herein, Defendant sold products to the United States Government and its agencies under a General Services Administration (GSA) Multiple Awards Schedule and listed products for sale on the GSA Advantage Website and, as such, has agreed to comply with the Trade Agreements Act, the Buy American Act and the American Recovery and Reinvestment Act, that prohibit the sale of goods to the United States that originate in non-designated countries, and/or the Defendant has agreed to specifically and correctly identify the country of origin of all products offered for sale to the United States Government. From 2011 to 2012, Defendant Haskell New York Inc. maintained GSA Contracts selling goods and services to the United States Government under Schedule 75. Under these contracts, Haskell New York Inc., earned $80,544 in Fiscal Year 2011; and $88,966 in Fiscal Year 2012.

13.    Defendant AVDEALS America, Inc., is a corporation with its principal office in Wilmington, Delaware that sells products to government and non-government customers. At all times relevant herein, Defendant sold products to the United States Government and its agencies under a General Services Administration (GSA) Multiple Awards Schedule and listed products for sale on the GSA Advantage Website and, as such, has agreed to comply with the Trade

Agreements Act, the Buy American Act and the American Recovery and Reinvestment Act, that prohibit the sale of goods to the United States that originate in non-designated countries, and/or the Defendant has agreed to specifically and correctly identify the country of origin of all products offered for sale to the United States Government. From 2010 to 2012, Defendant AVDEALS America, Inc. maintained GSA Contracts selling goods and services to the United States Government under Schedules 58 I, 36, and 70. Under these contracts, AVDEALS America, Inc., earned $2,228,678 in Fiscal Year 2010; $1,131,768 in Fiscal Year 2011; and $109,079 in Fiscal Year 2012.

14.     Defendant ABC Laserjet Inc., is a corporation with its principal office in Norcross, Georgia that sells products to government and non-government customers. At all times relevant herein, Defendant sold products to the United States Government and its agencies under a General Services Administration (GSA) Multiple Awards Schedule and listed products for sale on the GSA Advantage Website and the DOD EMALL Website and, as such, has agreed to comply with the Trade Agreements Act, the Buy American Act and the American Recovery and Reinvestment Act, that prohibit the sale of goods to the United States that originate in non-designated countries, and/or the Defendant has agreed to specifically and correctly identify the country of origin of all products offered for sale to the United States Government. From 2010 to 2012, Defendant ABC Laserjet Inc. maintained numerous GSA Contracts selling goods and services to the United States Government under Schedule 36 and under a Blanket Purchase Agreement (BPA). Under the Schedule 36 contract alone, ABC Laserjet Inc., earned $536,813 in Fiscal Year 2010; $400,818 in Fiscal Year 2011; and $385,543 in Fiscal Year 2012.

15.     Defendant WTD Supply Inc., is a corporation with its principal office in Brooklyn, New York that sells products to government and non-government customers. At all

times relevant herein, Defendant sold products to the United States Government and its agencies under a General Services Administration (GSA) Multiple Awards Schedule and listed products for sale on the GSA Advantage Website and the DOD EMALL Website and, as such, has agreed to comply with the Trade Agreements Act, the Buy American Act and the American Recovery and Reinvestment Act, that prohibit the sale of goods to the United States that originate in non-designated countries, and/or the Defendant has agreed to specifically and correctly identify the country of origin of all products offered for sale to the United States Government. From 2010 to 2012, Defendant WTD Supply Inc. maintained numerous GSA Contracts selling goods and services to the United States Government under Schedule 51V and under a Blanket Purchase Agreement (BPA). Through sales to the government, WTD Supply Inc., earned $1,581,600 in Fiscal Year 2010; $1,294,500 in Fiscal Year 2011; and $839,200 in Fiscal Year 2012.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. §§ 3730 and 3732, and 28 U.S.C. §§ 1331 and 1345.

17.     This Court has personal jurisdiction over Defendant, pursuant to 31 U.S.C. § 3732(a) because Defendants transact business in this District.

18.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and (b), under 28 U.S.C. §§ 1391(b) and (c), and 1395(c), and because acts proscribed by 31 U.S.C. §3729, which are complained of herein, occurred within this District.

## BACKGROUND RESPECTING VIOLATIONS OF THE TRADE AGREEMENTS ACT

19.     The GSA was created pursuant to the Federal Property and Administrative Services Act of 1949 to consolidate agency service activities, including purchasing supplies and equipment for Federal agencies. As part of its duties, the GSA enters into Multiple Award Schedules (Federal supply contracts) with various private contractors or vendors. In these

7

Multiple Award Schedules, vendors' products are identified, priced and offered for sale through GSA and DOD catalogues and websites. Federal agencies then purchase their supplies and equipment from the GSA contractors using those catalogues and websites.

20.     Pursuant to the GSA Multiple Award Schedules and the Federal Acquisition Regulations (FAR), vendors, including Defendants, agree to comply and certify compliance with the Trade Agreements Act, the Buy American Act, and the American Recovery and Reinvestment Act (prohibiting the sale to the United States or its agencies of goods that originate in countries identified as "non-designated"), and further agree to specifically and correctly identify the country of origin of all products offered for sale to the United States Government, to ensure compliance with the statutes.     Under GSA procurement policies, vendors must specifically list all products for sale and their countries of origin before the products can be approved for sale on the website. Any product from a non-designated country cannot be listed on the GSA Advantage website. *See* Exhibit 1.

21.     Plaintiff Steinman has been a government vendor for nearly 30 years. In this capacity he sells office supply products to federal agencies under a General Services Administration (GSA) Multiple Awards Schedule and lists office products for sale on the GSA Advantage Website and DOD EMALL Website.

22.     Since Plaintiff Steinman sells products through the GSA Advantage Website and the DOD EMALL Website he regularly receives and reviews product lists, including those prepared by Defendants, that indicate the country of origin of all products Defendants offered for sale to the United States.

23.     Within his capacity as an executive in the industry, and as the responsible individual for ensuring compliance with TAA regulations, Plaintiff Steinman has integrated and

incorporated country of origin data from a variety of sources, using his expertise in the industry to focus in on the most reliable and dependable information to produce exceedingly accurate valuations of real-time country of origin information. Plaintiff Steinman then developed a computer model to contrast this information with that of actual government sales. It was through this verification that Plaintiff Steinman became aware that Defendants falsely certified to the GSA, and to the Government customers, that products it offered for sale through the GSA and DOD EMALL websites originated in the United States or in designated countries, when they did not. From November of 2010 onward, Defendants falsely certified to the GSA that a variety of products sold through GSA and DOD EMALL were made in the United States or other designated countries, whereas, in truth, they were manufactured in various "non-designated" countries.

24.     Plaintiff Steinman discovered that as a result of these false certifications, Defendant sold products to the United States that violated the Federal Acquisition Regulation (the "FAR"), the Trade Agreements Act, the Buy American Act and/or the American Recovery and Reinvestment Act.

25.     Defendants knowingly presented or caused to be presented, a false or fraudulent claim for payment or approval to the United States Government by virtue of conducting sales through the GSA Advantage Website and DOD EMALL Website of products that were not in fact from designated countries, and therefore in violation of the Federal Acquisition Regulation (the "FAR"), the Trade Agreements Act, the Buy American Act and/or the American Recovery and Reinvestment Act.

26.     Defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim to the United States Government by virtue of

listing products for sale on the GSA Advantage Website and DOD EMALL Website that were not in fact from designated countries, and therefore in violation of the Federal Acquisition Regulation (the "FAR"), the Trade Agreements Act, the Buy American Act and/or the American Recovery and Reinvestment Act.

27.     From June 2009, Plaintiff Steinman accumulated real-time country of origin information from dozens of vendors to evaluate and obtain reliable country of origin information for an assortment of products. Plaintiff Steinman confirmed this information by comparing and contrasting the available country of origin information, and analyzing the reliability of the sources to achieve dependable country of origin information.

28.     Plaintiff Steinman also obtained sales and invoice information which indicated that Defendants sold a variety of products to the United States Government. Plaintiff Steinman then compared his accumulated country of origin information to product sales by the Defendants to uncover sales of products that were listed as originating from the United States or another designated country, when in fact the product was manufactured in a "non-designated" country. *See* Exhibit 2.

29.     These products were sold to the United States Government from the GSA Advantage Website and the DOD EMALL Website.

30.     The government purchased the products referenced herein from 2010 to 2012.

31.     Non-compliant sales by Defendants to the United States through the GSA and DOD EMALL websites (totaling approximately $222,035.61) are attached hereto as Exhibit 3 and are hereby incorporated by reference.

32.     As a result of this deception by Defendants and other vendors, the United States Government purchased products that were not in compliance with the Federal Acquisition

Regulation (the "FAR"), the Trade Agreements Act, the Buy American Act and/or the American Recovery and Reinvestment Act.

33. By virtue of the number of products identified in the above referenced Exhibits that were illegally listed for sale by Defendants, and the volume of annual GSA sales conducted by Defendants, from approximately 2010 through the present, it is highly probable that federal contracting officers relied upon the Defendant's material and false misrepresentation about the country of origin of these products and purchased these products in violations of the Trade Agreements Act, FAR 25.4, the Buy American Act, the American Recovery and Reinvestment Act and/or GSA procurement policies..

## COUNT I
### (Trade Agreements Act Violations – False Certification)
### (False Claims Act 31 U.S.C. §3729 *et. seq.*)

34. Plaintiff Steinman alleges and incorporates by reference the allegations made in paragraphs 1 through 33 of this complaint.

35. By virtue of the acts set forth above, the Defendants knowingly, or with reckless disregard or deliberate indifference of the truth caused to be presented, false or fraudulent certifications to the United States, by making false statements about the country of origin of products offered for sale to the United States Government, in violation of 31 U.S.C. §3729(a)(1)(B), and that the false certifications caused the false or fraudulent claims to be approved and paid by the United States.

36. The United States, unaware of the falsity of the records, statements and/or claims made by the Defendants and in reliance on the accuracy thereof, paid for aforementioned false claims.

37. By virtue of the acts described above, the Defendants defrauded the United States.

11

38.     As set forth in the preceding paragraphs, Defendants violated 31 U.S.C. §3729 *et.*
*seq.* and have thereby damaged and continue to damage the United States Government by their
actions in an amount to be determined at trial.

**COUNT II**
**(Trade Agreements Act Violations – False Claims)**
**(False Claims Act 31 U.S.C. §3729 *et. seq.*)**

39.     Plaintiff Steinman alleges and incorporates by reference the allegations made in
paragraphs 1 through 38 of this complaint.

40.     By virtue of the acts set forth above, Defendants knowingly, or with reckless
disregard or deliberate indifference to the truth presented, or caused to be presented, false or
fraudulent claims to the United States for payment, in violation of 31 U.S.C. § 3729(a)(1)(A),
and that the Defendants caused the false or fraudulent claims to be approved and paid by the
United States, in violation of 31 U.S.C. §3729(a)(1).

41.     The United States, unaware of the falsity of the records, statements and/or claims
made by the Defendants and in reliance on the accuracy thereof, paid for aforementioned false
claims.

42.     By virtue of the acts described above, the Defendants defrauded the United States.

43.     As set forth in the preceding paragraphs, Defendants violated 31 U.S.C. §3729 *et.*
*seq.* and have thereby damaged and continue to damage the United States Government by their
actions in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff/Relator Steinman prays for judgment against Defendants as
follows:

44. That Defendants cease and desist from violating 31 U.S.C. §3729 *et. seq.*;

12

45. That this Court enter judgment against the Defendants in an amount equal to three times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of 31 U.S.C. §3729 *et. seq.*;

46. That Plaintiff/Relator be awarded the maximum amount allowed pursuant to §3730(d) of the False Claims Act;

47. That Plaintiff/Relator be awarded all costs and expenses of this action, including attorney's fees; and

48. That Plaintiff/Relator recover such other relief as the Court deems just and proper.

Date:  October 24, 2013                    Respectfully submitted,

                                           /s/
                                           _____
                                           Jonathan Greenbaum
                                           Barry Coburn
                                           COBURN & GREENBAUM PLLC
                                           1710 Rhode Island Avenue, N.W.
                                           2nd Floor
                                           Washington, DC  20036
                                           Tel: (202) 657-4490
                                           Fax: (866) 561-9712
                                           jg@coburngreenbaum.com
                                           barry@coburngreenbaum.com

                                           *Counsel for Plaintiff/Relator Robert Steinman*